J-S08001-18

2018 PA Super 63

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MICHAEL WADE GILES, JR. | : | |
| Appellant | : | No. 1675 WDA 2016 |

Appeal from the Judgment of Sentence September 23, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004601-2015

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS*, P.J.E.

OPINION BY LAZARUS, J.:                           **FILED MARCH 20, 2018**

Michael Wade Giles, Jr., appeals from the judgment of sentence, entered

in the Court of Common Pleas of Allegheny County, following his convictions

of rape of a child,[1] aggravated indecent assault,[2] unlawful contact with minor-

sexual offenses,[3] indecent assault-person less than 13 years of age,[4]

_____

[1] 18 Pa.C.S. § 3121(c).

[2] 18 Pa.C.S. § 3125(a)(1).

[3] 18 Pa.C.S. § 6318(a)(1).

[4] 18 Pa.C.S. § 3126(a)(7).

_____

*   Former Justice specially assigned to the Superior Court.

corruption of minors-defendant age 18 or above,[5] endangering welfare of children,[6] and indecent exposure.[7] After our review, we affirm.

The charges in this case stemmed from incidents occurring in the spring and summer of 2013, when the female victim, Q.H., was ten years old. At trial, Q.H. testified that on the first occasion, Giles touched her vagina while they were in her mother's bedroom. On the second occasion, again in her mother's bedroom, Giles made Q.H. touch his penis. On the third occasion, Q.H. testified that Giles told her to go to the living room and take off her clothes; he then had sexual intercourse with her and performed oral sex on her. Q.H. disclosed these three incidents at the forensic interview and at the preliminary hearing, but left out the oral sex that occurred during the third incident, to which she testified at trial.

Following trial, the jury convicted Giles of the aforementioned offenses and the court sentenced him to an aggregate term of imprisonment of 215 to 430 months, to be served consecutively to an existing federal sentence.[8] Giles filed post-sentence motions, which were denied, and this timely appeal

---

[5] 18 Pa.C.S. § 6301(a)(1)(ii).

[6] 18 Pa.C.S. § 4304(a)(1).

[7] 18 Pa.C.S. § 3127(a).

[8] The Commonwealth, at sentencing, withdrew a prior *praecipe* for a Sexually Violent Predator (SVP) hearing. Giles was classified as a Tier III offender under the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10–9799.41, and, therefore, he was ordered to undergo lifetime registration with the Pennsylvania State Police as a sexual offender. 42 Pa.C.S. § 9799.15(a)(3).

followed.   Both Giles and the trial court have complied with Pa.R.A.P. 1925.

Giles raises two issues for our review:

> 1. Whether the trial court erred as a matter of law and/or abused its discretion by permitting the Commonwealth to admit Q.H.'s forensic interview video as a prior consistent statement?
>
> 2. Whether the trial court erred as a matter of law and/or abused its discretion by permitting Q.H.'s grandmother's testimony about the contents of an interview that she observed between Q.H. and a police officer as a prior consistent statement?

Appellant's Brief, at 7.

At trial, which was held June 29, 2016 to July 1, 2016, over defense

counsel's hearsay objection, the court admitted into evidence the video of

Q.H.'s forensic interview.  The forensic interview took place the previous year,

on March 11, 2015.  The trial court ruled the interview video was admissible

as a prior consistent statement.  **See** Pa.R.E. 613(c).  **See also**

**Commonwealth v. Hunzer**, 868 A.2d 498, 512 (Pa. Super. 2005) (prior

consistent statements of child victim of sexual assault, offered to corroborate

in-court testimony, are not hearsay).

In reviewing a trial court's ruling on the admissibility of evidence, our

standard of review is one of deference. It is firmly established that

"[q]uestions concerning the admissibility of evidence lie within the sound

discretion of the trial court, and [a reviewing court] will not reverse the court's

decision on such a question absent a clear abuse of discretion."

*Commonwealth v. Chmiel*, 738 A.2d 406, 414 (Pa. 1999). An abuse of

discretion requires:

> not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Chmiel*, 738 A.2d at 510, citing *Commonwealth v. Widmer*, 744 A.2d 745,

753 (Pa. 2000) (citation omitted).

Pennsylvania Rule of Evidence 613(c) provides:

**(c) Witness's Prior Consistent Statement to Rehabilitate**

Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

(1)  fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

(2)  having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation

Pa.R.E. 613(c).

At trial, Q.H. testified that the first sexual assault occurred in April of

2014, sometime before Easter. N.T. Jury Trial, 7/1/16, at 151, 159-60.[9] She

testified that the second assault occurred about a week later, *id.* at 160, and

---

[9] In 2014, Easter was celebrated on April 20.

the third in July of 2014, the day before her birthday, which is July 29. *Id.* at 169.

On cross-examination, defense counsel challenged this testimony, inferring either fabrication, or inaccurate or faulty recollection, by referring to the March 11, 2015 forensic interview with Dr. Susan Nathan:

> Q. Now, do you remember when you were interviewed by Dr. Susan Nathan, **you told her that the first incident occurred in July**?
>
> A. No.
>
> Q. You don't remember that?
>
> A. (Witness shakes head indicating a negative response.)

N.T. Jury Trial, 7/1/16, at 182 (emphasis added). Defense counsel again referred to this later in his cross-examination:

> Q. And I would like to go through the specific details of those incidents again, one at a time. Now, we talked a little bit about when it occurred and where it occurred. Do you definitively -- Do you recall today whether you are saying it is April or July for this first incident?
>
> A. April.
>
> Q. **So your prior statement to Dr. Nathan that occurred in July, that's not right?**
>
> A. No.

*Id.* at 191-92 (emphasis added).

We point out that *nowhere* in the transcript of the forensic interview does Q.H. ever mention that the first incident, or any of the incidents for that matter, occurred in July. In fact, Dr. Nathan asked Q.H. how old she was

when this occurred, to which Q.H. replied, "Ten." Forensic Interview, 3/11/15, at 9. With respect to pinpointing a time, Q.H. stated only that she was "in fifth" grade. *Id.*

The victim was subjected to extensive cross-examination in an attempt to discredit her recollection of the incident in question. *See* N.T. Jury Trial, 7/1/16, at 180-244. Review of the record indicates the character of impeachment "was such that the trial court could reasonably exercise its discretion to permit admission of evidence of prior consistent statements to corroborate the child victim's impeached testimony." *Hunzer*, *supra* at 513, quoting *Commonwealth v. Willis*, 552 A.2d 682, 693 (Pa. Super. 1988). *See also* Official Comment to Pa.R.E. 613 ("Pa.R.E. 613(c)(2) is arguably an extension of Pennsylvania law, but is based on the premise that when an attempt has been made to impeach a witness with an alleged prior inconsistent statement, a *statement consistent with the witness's testimony* should be admissible to rehabilitate the witness if it supports the witness's denial or explanation of the alleged inconsistent statement.") (emphasis added). We conclude, therefore, that the trial court did not abuse its discretion in admitting the forensic interview as a prior consistent statement to rehabilitate the inference of faulty memory. *See* Pa.R.E. 613(c); *Chmiel*, *supra*. *See also Commonwealth v. Willis*, *supra* (child's prior consistent statements may be admissible to rebut what jury may presume to be inherent in any child's account of such abuse, including decay of original memory).

The court also admitted into evidence, as a prior consistent statement, Q.H.'s grandmother's testimony about the contents of an interview between the victim and a police officer, at the hospital emergency room, which occurred immediately after Q.H. disclosed the incidents to her mother. ***See*** N.T. Jury Trial, 7/1/15, at 274-76. The trial court stated that this hearsay testimony was admitted as a prior consistent statement for the same reasons and under the same law as the forensic interview. ***See id***. at 275; ***see also*** Trial Court Opinion, 7/18/17, at 7 ("[Grandmother's] statement also qualifies as a prior consistent statement, admissible under ***Hunzer***. Furthermore, [Grandmother's] statement was offered in response to [Giles'] allegations of fabrication and improper motive.").

Grandmother testified at trial, as follows:

Q: I would like to call your attention to the date on and around [when Q.H.] first disclosed to anyone about what happened to her and the defendant, Michael Giles.

A: Yes.

Q: Can you tell the jury, are you familiar with an issue that came up relating to photographs that she sent to another boy in school?

A: Yes, I'm very familiar with it.

Q: And when you were made aware of it, without going into the details of what happened with the photographs, how did you react to that and what was your course of action?

A: I was in shock. And I was requested to actually appear with the principal at the school to have a discussion with [Q.H.].

Q. Outside of what that discussion was, did you have any advice or anything to tell [Q.H.'s] mother, about how to handle that situation?

A. Yes.

Q. Without going into the details of that, were you present when [Q.H.], for the first time went into details about the things that happened to her?

A. Yes.

Q. And who was doing that interview, do you recall, and where was that taking place?

A. It was a Pittsburgh police officer that was present. Sorry, at this point I can't remember her name.

Q. That's fine.

A. And it was myself, and we were in the emergency room at Mercy Hospital with [Q.H.].

Q. All right. And the limited question I want to ask you about, and I don't want you to go into everything [Q.H.] said.

A. Understood.

Q. But during that first initial interview in the emergency room, do you recall [Q.H.] making a statement that Michael Giles had said something to the effect of the first time this will hurt and then it won't hurt after that?

A. I do.

**Q. Do you also remember [Q.H.] stating, during that initial interview, that Michael Giles had performed oral sex on her, that is, he did put his mouth on her vagina?**

**A. I do.**

*See* N.T. Jury Trial, 7/1/15, at 272-74 (emphasis added).

The court admitted this statement as a prior consistent statement to Q.H.'s previous trial testimony, in which she stated that on the third incident, after Giles had sexual intercourse with her, he "put his mouth" on her "girl

parts." *Id.* at 174. She further clarified that her "girl parts" was her vagina.

*Id.* Defense counsel cross-examined Q.H. as follows:

> Q:   When you testified on direct examination, in relation to the third incident, one of the things that you mentioned was that after the sperm was cleaned up by [the] boxer shorts or shirt, whichever you choose, Michael Giles placed his lips on your girl parts; do you recall testifying to that?
>
> A:   Yes.
>
> Q:   You will agree with me that you never mentioned that to Dr. Susan Nathan in your interview?
>
> A:   I know.
>
> Q:   And you'll agree with me that you never mentioned that when you testified in front of the magistrate at the preliminary hearing, correct?
>
> A:   (Witness nodded head indicating an affirmative answer).

N.T. Jury Trial, 7/1/16, at 247-48.

As the trial court properly noted, Grandmother's testimony as to the interview between Q.H. and the police officer was admissible as a prior consistent statement in response to cross-examination, which inferred fabrication and improper motive, i.e., to distract her mother when she confronted Q.H. about sending pictures from her phone to a boy at school. The trial court properly allowed the Commonwealth to rehabilitate the witness by eliciting prior consistent statements that the victim had made. *See* Pa.R.E. 613(c). We find no abuse of discretion. *Chmiel*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2018