J-S38003-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC TAYLOR | : | |
| | : | |
| Appellant | : | No. 1849 WDA 2016 |

Appeal from the Judgment of Sentence August 3, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0010212-2014

BEFORE:   BOWES, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                    FILED SEPTEMBER 25, 2018

Eric Taylor appeals from the aggregate judgment of sentence of 270 to 540 months imprisonment imposed after he was convicted of, inter alia, homicide of an unborn child and attempted homicide.  We affirm.

The trial court offered the following summary of the history of the case.

> On May 26, 2014, at approximately 12:30 a.m., [Appellant] told Leroy Powell that he was going to go up the [street] to ["]do a bang,["] which [Mr.] Powell understood to be a shooting. [Appellant], [Mr.] Powell, Daniel Bracey and Calvonte Moore (hereinafter referred to as "Moore"), all walked up to the home of [fifteen-year-old] DaRae Delgado, who lived at 135 Friendship Street in the City of Duquesne.  [Appellant], Bracey and [Mr.] Powell went onto the porch of [Ms.] Delgado's home which was unlit and knocked on the door.  [Ms.]Delgado went to the front door, asked who was there, received no response but opened the door and [Ms.] Delgado was shot four times. Her assailants ran from her home, however, their images were captured on surveillance video cameras mounted on several telephone poles. At the time of the shooting, [Ms.] Delgado was thirty-one weeks pregnant and while she survived the shooting, her unborn child did not.   While [Ms.] Delgado was in the hospital she was interviewed by the police and based upon information that they

_____

*   Retired Senior Judge assigned to the Superior Court.

had, they believed that Naisreal "Iggy" Owens, (hereinafter referred to as "[Mr.] Owens"), was the possible shooter. A photo array was put together and shown to [Ms.] Delgado and she was asked whether or not she knew anyone in the photo array and at the time of trial, she indicated that she told the police that she knew [Mr.] Owens because he had once asked her for a light for his cigarette. She denied that she ever told the police that [Mr.] Owens was the individual that shot her. The police obtained a search warrant for [Mr.] Owens' residence and went to that residence and found [Mr.] Owens but nothing that would link him to the shooting. [Mr.] Owens denied that he was the shooter, although he did tell the police that he was with [Appellant] shortly before the shooting occurred. [Mr.] Owens phoned some relatives of the victim in an attempt to tell them that he was not the shooter. The police then continued their investigation and talked to Moore and [Mr.] Powell in order to focus on [Appellant] as the defendant. In talking to [Mr.] Powell, he told the police that [Appellant] admitted to him that he had shot the girl and told him not to tell anybody. . . .

. . . .

On May 5, 2016, following a jury trial,[1] [Appellant] was found guilty of the charge of criminal homicide of an unborn child, criminal attempt to commit criminal homicide, aggravated assault, one count of recklessly endangering another person and possession of a firearm without a license. [Appellant] was acquitted of one count of recklessly endangering another person and in a non-jury trial held in conjunction with this jury trial, th[e trial c]ourt found him guilty of person not to possess a firearm. A presentence report was ordered and on August 3, 2016, [Appellant] was sentenced to a period of incarceration of not less than one hundred eighty and not more than three hundred sixty months for his conviction of criminal homicide of an unborn child and a sentence of ninety to one hundred eighty months for his conviction of criminal attempt to commit criminal homicide which was to run consecutive to the sentence imposed upon him for the criminal homicide of an unborn child. There were no further

_____

[1] Appellant was fifteen years old at the time of the shooting. He filed a petition to decertify the case to juvenile court, but decided not to pursue it, choosing to proceed to a jury trial as an adult. See N.T. Decertification Hearing, 2/17/16, at 2, 5-6.

penalties imposed with respect to his remaining convictions in light of the sentences imposed upon him for his convictions of count one and count two.

[Appellant] filed timely post-sentence motions and a hearing was held on those motions on November 29, 2016, after which hearing his motions were denied. [Appellant] filed a timely notice of appeal on December 2, 2016, and was directed to file a concise statement of matters complained of on appeal. [Appellant's] appellate counsel requested several continuances to file that statement and did file that statement on June 5, 2017.

Trial Court Opinion, 10/16/17, at 4-5, 2-3.

Appellant presents the following questions for this Court's review.

1.  Whether the trial court erred and/or abused its discretion in allowing the Commonwealth to introduce at trial the testimony of a witness from the preliminary hearing, as well as a video recorded statement of that witness, made prior to the preliminary hearing, in violation of the hearsay rule, and in violation of [Appellant's] right to confront the witnesses against him under the Sixth Amendment to the United States Constitution, as well as a violation of [his] right "to be confronted with the witnesses against him" under Article I, § 9 of the Pennsylvania Constitution[.]

2.  Whether the verdicts in this case are contrary to the weight of the evidence; that the testimony of the Commonwealth's witnesses was vague, uncertain and contradictory such that the testimony was so unreliable that the verdicts could only have been based upon supposition and conjecture.

3.  Whether the sentence imposed is excessive and unreasonable in light of the facts and circumstances of the case and of [Appellant.]

Appellant's brief at 6.

We begin with Appellant's evidentiary issue, mindful of our standard of review.

In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established that questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion. An abuse of discretion requires:

> not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Commonwealth v. Giles, 182 A.3d 460, 461-62 (Pa.Super. 2018) (cleaned up).

Appellant argues that the trial court erred in allowing the Commonwealth to introduce the preliminary hearing testimony of Leroy Powell, as well as the recording of Mr. Powell's statement to police that was played at the preliminary hearing. Appellant contends that the trial court's decision to admit Mr. Powell's out-of-court statements violated the rule against hearsay as well as Appellant's constitutional right to confront witnesses against him. Appellant's brief at 14-23.

By way of background, at the preliminary hearing Mr. Powell testified that he was with Appellant on the night of the shooting, that he saw Appellant go towards Ms. Delgado's house, saw Mr. Moore back away before the gunshots, witnessed Appellant run from the shooting, and that Appellant later told Mr. Powell "don't say nothing.'" N.T. Preliminary Hearing, 7/30/14, at 24-25, 28. However, Mr. Powell did not testify entirely consistently with the video-recorded statement that he gave to police in May 2014, which prompted

- 4 -

the use of the video statement at that time. Mr. Powell was unavailable to testify at Appellant's trial, having become a homicide victim himself shortly after testifying at the preliminary hearing. The trial court granted the Commonwealth's motion in limine over Appellant's objection, allowing the Commonwealth to both read the transcript of Mr. Powell's prior testimony to the jury and show the jury the video statement. See Trial Court Opinion, 10/16/17, at 5.

Appellant's argument is based upon the proposition that "a prior inconsistent statement is not admissible as substantive evidence unless the declarant is not only available for cross-examination, but more pointedly, is available for cross-examination concerning the prior inconsistent statement at issue." Appellant's brief at 14 (quoting Commonwealth v. Romero, 722 A.2d 1014, 1017 (Pa. 1999)). Appellant maintains that he never had the opportunity to cross-examine Mr. Powell about the taped statement or its inconsistencies with the preliminary hearing testimony. Id. at 20. Appellant contends that the introduction of the evidence violated both the rule against hearsay and his confrontation rights, and warrants a new trial. Id. at 16, 23.

Our rules provide that a prior inconsistent statement of a witness is not excluded as hearsay if the declarant testifies and is subject to cross-examination about the prior statement, and the statement, inter alia, "is a verbatim contemporaneous electronic recording of an oral statement." Pa.R.E. 803.1(1)(C).

At the preliminary hearing, Mr. Powell indicated that he saw Appellant with a firearm three weeks before the shooting, not the day before, and denied having seen Appellant with a gun as Appellant ran from Ms. Delgado's home immediately following the shooting. The Commonwealth asked Mr. Powell on direct examination if he remembered telling Detective Daniel Mayer that he saw Appellant with a gun the day before the incident and again with a pistol in his right hand as he ran away from the shooting. N.T. Preliminary Hearing, 7/30/14, at 26. On cross-examination, Appellant elicited testimony from Mr. Powell that he could not see a gun, and never told Detective Meyer that he saw Appellant with a gun the day before the shooting or on the evening of the shooting. Id. at 35. On redirect examination, Mr. Powell indicated that he remembered being asked by detective Mayer to give a videotaped statement, and that he did give such a statement. Id. at 38. Appellant declined to ask Mr. Powell any questions about that statement on re-cross. Id. at 39.

Mr. Powell was then excused without objection from Appellant, and the Commonwealth moved to play the video statement. Id. Appellant then objected, indicating that the Commonwealth "should have shown the videotape in the beginning[.]" Id. The Commonwealth responded that it could not show it until the witness testified and denied saying things that were in the statement, and the court allowed the video to be played. Id. at 40. Appellant, having stipulated that Detective Mayer would authenticate the

video, did not ask to question Mr. Powell further about the statement.[2]  Id. at 41.

The above circumstances are strikingly similar to those in Commonwealth v. Stays, 70 A.3d 1256, 1265 (Pa.Super. 2013).  In that case, the victim was shot while riding with the witness in the witness's car. The victim did not see who shot him.  When questioned by the police, the witness identified Stays as the shooter and signed a written statement to that effect.  At the preliminary hearing, his prior inconsistent statements were offered after the witness denied having seen the shooter and claimed he did not identify Stays to the police.  The witness disavowed the statement, although he acknowledged that his signature appeared on it.  The witness then was murdered between the preliminary hearing and trial.  The trial court admitted into evidence both the preliminary hearing testimony and the police statement.

Stays argued on appeal that admission of the police statement as substantive evidence at trial violated both the rule against hearsay and the

_____

[2] In the subsequent argument to the court that the Commonwealth failed to show a prima facie case, Appellant contended that "there's nothing there" in the video.  N.T. Preliminary Hearing, 7/30/14, at 44.  Appellant stated "all that was said on the video of any substance was that Mr. Powell states he sees [Appellant] running, holding his pocket with what he thought was a gun but never sees a gun.  There's no question regarding Mr. Calvonte and what he does or if he had a gun on that night in question."  Id.  Appellant, however, does not argue on appeal that the video statement was not inconsistent.  In any event, Appellant's own arguments of record suggest that if it was error to show the video, it was harmless.

confrontation clause. This Court first rejected the hearsay contention, relying upon Pa.R.E. 803.1 in finding that the witness's statement to police was admissible at the preliminary hearing "so long as the witness had been available for cross-examination" at the preliminary hearing. Id. at 1262. "Significantly," this Court noted, "it is not imperative that the defendant actually cross-examine the witness; if the defendant had an adequate opportunity to do so with full knowledge of the inconsistent statement, the mandate of Rule 803.1 is satisfied." Id. Therefore, the prior inconsistent police statement was properly admitted at the preliminary hearing, even though Stays did not choose to cross-examine the witness at the preliminary hearing, because "Stays was offered the opportunity at the preliminary hearing to cross-examine [the witness] about the original statement and the photo array identification, as well as [the witness's] attempted recantation." Id. Further, this Court held that the proper introduction of the police statement at the preliminary hearing under Pa.R.E. 803.1 rendered it in effect part of the preliminary hearing testimony itself, thus making the statement "subsequently admissible at trial pursuant to Rule 804(b)."[3] Id. at 1261-62.

_____

[3] Pursuant to Pa.R.E. 804, former testimony is not excluded by the rule against hearsay if the declarant is unavailable as a witness if the testimony was given at a trial, hearing, or deposition, and is offered against a party who had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Pa.R.E. 804(b)(1).

Similarly, although the Court determined that Stays waived his Confrontation Clause claim, it opined that the claim lacked merit in any event. We noted that

> the transcript of the preliminary hearing establishes that [Stays] had an ample opportunity to cross-examine [the witness], and should have been motivated to fully avail himself of it. [The witness's] importance to the case was overwhelming, as he was the only person to see the shooter—the victim himself . . . testified that he had not seen anyone. The fact that [the witness] actually chose to recant at the hearing, by disavowing the statement he had given to the police on the day after the shooting, in no way nullifies the interest Stays had first, in testing the grounds for the recantation and, ultimately, in exploring any recollection [the witness] had of the event.

Id. at 1265.

The Stays Court further explained that "the admissibility of former testimony and its ability to withstand Confrontation Clause challenges derives not from the actual conduct or content of cross-examination, but from its availability." Id. (emphasis in original) (citing Commonwealth v. Wholaver, 989 A.2d 883, 904 (Pa. 2010)).

The instant case is not materially distinguishable from Stays. As detailed above, Mr. Powell testified at Appellant's preliminary hearing, he was confronted by the Commonwealth with prior inconsistent statements, and Appellant had a full and fair opportunity to question Mr. Powell about the inconsistencies and reasons for them.[4] Thus, the video statement was

_____

[4] See N.T. Preliminary Hearing, 7/30/14, at 29-37.

- 9 -

properly admitted as substantive evidence at Appellant's preliminary hearing pursuant to Rule 803.1.  Further, pursuant to Stays, both the preliminary hearing testimony and the video were properly admitted as substantive evidence at trial pursuant to Rule 804(b), given Mr. Powell's unavailability, with no Confrontation Clause violation.  As such, Appellant's first issue merits no relief.

Appellant's next stated question is whether his convictions are against the weight of the evidence.  Appellant's brief at 6.  However, in the argument section of his brief, he contends that the evidence at trial was insufficient to prove his identity as the shooter.  Id. at 24-28.

By failing to include the sufficiency question among his questions presented, Appellant waived it.[5]   See Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Commonwealth v. Bryant, 57 A.3d 191, 196 n.7 (Pa.Super. 2012) ("[The a]ppellant's brief contains no reference to a challenge as to the indecent assault conviction.  To the extent that [the a]ppellant asserts such claims in his argument, they are waived for failure to include them in his Statement of the Questions [Involved].").

_____

[5] In any event, the properly-admitted evidence of Mr. Powell, discussed at length above, is itself sufficient to establish Appellant's identity as the shooter. Commonwealth v. Wilder, 393 A.2d 927, 928 (Pa.Super. 1978) ("[I]t is settled that a positive identification by one witness is sufficient for conviction.").

Further, there is no merit to the claim that Appellant's conviction is against the weight of the evidence.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1054–55 (Pa. 2013).

The trial court rejected Appellant's weight claim as follows: "nothing about the verdicts that were rendered in this case would shock someone's consci[ence]. The verdicts were consistent with the facts that were presented and amply displayed that [Appellant] was responsible for all of the crimes for which he was convicted." Trial Court Opinion, 10/16/17, at 19. Appellant has not raised any basis for us to conclude that the trial court's determination was the result of an abuse of discretion. Accordingly, Appellant's weight-of-the-evidence claim warrants no relief from this Court.

Appellant's final issue is a challenge to his sentence. He claims that his sentence is "illegal, excessive, and unreasonable in light of the facts and circumstances of the case and of the defendant." Appellant's brief at 29. Specifically, Appellant argues that the trial court improperly considered

- 11 -

Appellant's juvenile adjudications for two armed robberies that occurred when Appellant was thirteen years old. Id.

This claim does not implicate the legality of Appellant's sentence. See, e.g., Commonwealth v. Tobin, 89 A.3d 663, 669 (Pa.Super. 2014) ("Improper consideration of a sentencing factor does not make a sentence illegal, as a court may still have both the authority and discretion to impose the sentence."); Commonwealth v. Krum, 533 A.2d 134, 135 (Pa.Super. 1987) (en banc) ("If a sentencing court considers improper factors in imposing sentence upon a defendant, the court thereby abuses its discretion, but the sentence imposed is not rendered illegal.").

The following principles apply to our consideration of whether Appellant's claim raises a viable challenge to the discretionary aspects of his sentence.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

Commonwealth v. Samuel, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (some citations omitted).

Although Appellant filed a timely notice of appeal after preserving the issue in his post-sentence motion, his appellate brief does not contain a statement of reasons relied upon for allowance of appeal, and the Commonwealth has objected to its absence. See Commonwealth's brief at 54. Therefore, we may not reach the merits of Appellant's discretionary-aspects claim.[6] See, e.g., Commonwealth v. Kiesel, 854 A.2d 530, 533 (Pa.Super. 2004) ("Because the Appellant failed to comply with Pa.R.A.P. 2119(f) and the Commonwealth objected to the omission, this Court may not review the merits of the claim, and we deny allowance of appeal.").

Judgment of sentence affirmed.

Judge Strassburger joins this memorandum.

Judge Nichols concurs in the result.

_____

[6] We note that Appellant's argument is based solely upon this Court's decision in Commonwealth v. Luckenbaugh, 514 A.2d 896, 897 (Pa.Super. 1986) (remanding for resentencing where trial court improperly included adjudication occurring before the appellant was fourteen years old when calculating his prior record score). Not only is Luckenbaugh irrelevant to his argument because the adjudications at issue were not included in calculating his prior record score, see Guideline Sentence Form, 6/3/16 (showing prior record score of zero), but Appellant fails to acknowledge that our Supreme Court reversed this Court's remand order in that case on the basis that the issue was not properly before the Court. Commonwealth v. Luckenbaugh, 550 A.2d 1317 (Pa. 1988) (per curiam) (citing Commonwealth v. Passaro, 476 A.2d 346 (Pa. 1984)).

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/25/2018