**[J-104-2020] [MO: Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 9 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered August 29, |
| | : | 2019 at No. 976 WDA 2018 |
| v. | : | affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered June 11, |
| THOMAS AUGUST RABOIN, | : | 2018 at No. CP-02-CR-0009844- |
| | : | 2017. |
| Appellant | : | |
| | : | ARGUED: December 2, 2020 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DONOHUE**                                              **DECIDED: SEPTEMBER 7, 2021**

The trial court permitted the Commonwealth, in the rebuttal stage of trial, to play substantial portions of a videotaped interview between a forensic specialist and the child victim ("A.W."). I agree with the Majority that Pennsylvania Rule of Evidence 106, colloquially known as the rule of completeness, does not justify admission of this evidence but concur because in my view Raboin's cross-examination of his accuser did not create any misleading or otherwise prejudicial misimpression as required by the rule. I disagree with the Majority that the appropriate course is to remand to the Superior Court to determine whether this evidence was admissible as a prior consistent statement pursuant to Rule 613. In the appeal to the Superior Court, the Commonwealth declined to defend the admission of the evidence on that alternative ground despite the fact that the trial court initially relied on it. The Commonwealth argued, both in the Superior Court and in

this Court, only that Rule 106 applies, and, in the alternative, that any error in introducing the evidence was harmless beyond a reasonable doubt. In my view, the trial court erred by permitting the Commonwealth to play the forensic interview of the child witness and that playing the interview in rebuttal, among other reasons, rendered the error not harmless beyond a reasonable doubt. I would thus grant a new trial.

**I.**

<u>Rule 106 does not apply because counsel did not mislead the jury in the manner contemplated by the rule</u>

The Commonwealth argues that Rule 106 would have independently justified the admission of the videotape due to counsel's cross-examination of A.W. and a detective, which if correct means that the evidence was not erroneously introduced. The rule of completeness ensures that a party does not convey a misleading impression. A common method of challenging a witness's testimony is by showing they previously said something different than their testimony. *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) ("Use of such impeachment on cross-examination … test[s] the credibility of witnesses by asking them to explain prior inconsistent statements and acts."). Rule 106 ensures that impeachment does not omit crucial context. "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Pa.R.E. 106.

I agree with the Majority that Rule 106 does not justify introducing this evidence. However, the Majority suggests that playing the videotape, or at least the undefined

portions which would have been relevant based on an actual Rule 106 claim,[1] would have been proper "at or near the time of defense counsel's questioning of the victim or the detective." Majority Op. at 18. While I agree with the timing requirement, in my view, Rule 106 has no applicability under the circumstances presented.

As the Majority explains, the trial judge did not cite Rule 106.[2] Insofar as the rule is designed to ensure fairness, the Commonwealth's argument that the videotape was needed to combat a misleading impression obviously escaped the notice of its prosecutor, who perceived no such need. The Majority attempts to determine if the admission of evidence would have been justifiable for **equitable** reasons as opposed to **legal** reasons, something that the right-for-any-reason doctrine seems ill-equipped to do. *See Commonwealth v. Bryant*, 57 A.3d 191, 196 n.6 (Pa. Super. 2012) (acknowledging that

---

[1] As Raboin notes, the procedural posture of this case presents analytical difficulties because the party invoking Rule 106 bears the burden of showing how the material is relevant. *See Commonwealth. v. Bryant*, 57 A.3d 191, 196 (Pa. Super. 2012) (concluding that trial court did not err in excluding other pages of victim's diary; "The burden is on Appellant to specify what the relevancy of the rest of the diary would have been and how it would have aided the jury's understanding.").

[2] "In admitting the statements, the Court relied upon *Commonwealth v. Willis*, 552 A.2d 682, 691 (Pa. Super 1988) [(en banc)] and *Commonwealth v. Hunzer*, 868 A.2d 498 (Pa. Super. 2005)." Trial Court Opinion, 11/14/2018, at 9. Broadly speaking, those cases endorsed the notion that fact-finders would see children as inherent fabulists and prone to flights of fancy and exaggeration, thereby permitting the introduction of prior consistent statements "to corroborate even unimpeached testimony of child witnesses[.]" *Willis*, 552 A.2d at 692. *Hunzer* approvingly quoted *Willis* in allowing similar evidence.

Two days after Raboin's sentencing, the Superior Court issued *Commonwealth v. Bond*, 190 A.3d 664 (Pa. Super. 2018), which limited *Willis* on the grounds the opinion pre-dated the enactment of Rule 613. The *Bond* Court explained that *Hunzer*'s reliance on *Willis* was dicta as the prior statements were admissible under the facts of *Hunzer* to rebut an allegation of recent fabrication. The trial court concluded that the *Bond* decision established its evidentiary ruling was erroneous and "assert[s] that the harmless error doctrine applies." Trial Court Opinion, 11/14/2018, at 10.

completeness objections are "subject to the trial court's discretionary authority to determine the scope and limits of the right in the case at hand") (quotation marks and citation omitted). Because the prosecutor did not invoke the rule of completeness, it is difficult if not impossible to determine what "fairness" demanded. Nevertheless, I accept for purposes of disposition that the right-for-any-reason doctrine would allow a court to affirm.

However, I conclude that Rule 106 does not apply, because counsel's cross-examination did not create the conditions contemplated by the rule. By way of comparison, the United States Supreme Court's decision in *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), offers an example of why Rule 106 exists. That suit involved an airplane crash, where "the only seriously disputed question was whether pilot error or equipment malfunction had caused the crash." *Id.* at 157. The defense called an individual as an adverse witness, who admitted that he had authored a letter agreeing with certain facts pointing to pilot error. On cross-examination, plaintiff's counsel attempted to ask about other portions of the letter establishing that the witness nonetheless believed an equipment malfunction was to blame. The trial court sustained an objection by defense counsel that the question improperly called for an opinion.

The high Court observed that "the concerns underlying Rule 106 are relevant here, but, as the general rules of relevancy permit a ready resolution to this litigation, we need go no further in exploring the scope and meaning of Rule 106."[3] *Id.* at 172. The Court said, "We have no doubt that the jury was given a distorted and prejudicial impression of [the] letter. The theory … was that the accident was the result of a power failure, and,

---

[3] Pennsylvania's Rule 106 is "identical to F.R.E. 106." Pa.R.E. 106 cmt.

read in its entirety, his letter … was fully consistent with that theory." *Id.* at 170. The Court further explained that the misleading cross-examination plausibly conveyed to the jury that the witness "did not believe in his theory of [malfunction] and had developed it only later for purposes of litigation." *Id.* at 171.

There was no comparably discernable misleading impression of the forensic interview that the Commonwealth needed to address. According to the Commonwealth, the jury might have been left with the impression that A.W. was not telling the truth. *See* Commonwealth's Brief at 11 ("Regardless, given that the prosecution was attempting to counter the insinuations made by defense counsel … that the victim's accusations against Raboin were untrue … ."); *id.* at 27 (arguing that defense counsel "created in the minds of the jurors the suggestion that there was something about that interview that called into doubt the allegations that the victim had made from the witness stand."). At the risk of stating the obvious, the entire point of this criminal trial was to determine if the victim's accusations were true. This case presented the jury with a straightforward task of determining whether A.W., the only fact witness with any direct knowledge of these crimes, credibly testified that Raboin sexually assaulted her. **Any** cross-examination of A.W. is by definition insinuating that the victim's accusations are untrue. That is defense counsel's constitutional duty. The Commonwealth's position, taken to its logical end, means that the rule of completeness permits the introduction of any kind of prior statement that corroborates, in any sense, the "accusations" against a defendant.[4]

---

[4] As Raboin observed at oral argument, Rule 106 is rarely invoked in criminal cases. This may be because, as Raboin briefly references, a defendant has the right to confront his accuser. *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36, 61 (2004) ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth

Significantly, the Commonwealth fails to specify how the jury was misled by the questioning beyond suggesting that Raboin was not guilty, let alone how the videotape cured those prejudicial misimpressions. The *Beech Aircraft* Court pointed to a quite specific kind of misimpression: the jury would come away thinking that the witness had previously adopted a completely different opinion than the one he testified to, and that he later came up with an alternative theory solely for purposes of litigation. To put this case in *Beech Aircraft* terms, the cross-examination would need to convey that A.W. told the forensic interviewer that she was never sexually abused by Raboin and only later leveled the accusations for some other reason. The Commonwealth does not claim that is the case. Nor could it. Certainly, if Raboin had asked a clearly misleading question the Commonwealth would cite that. The exceedingly generic description of "misleading" cited by the Commonwealth and accepted by the Majority is simply incompatible with the purpose of Rule 106.[5] As a result, I concur only in the disposition.

---

Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability'"); *In re N.C.*, 105 A.3d 1199, 1214 (Pa. 2014) ("It is undisputed that A.D.'s video-taped, forensic interview conducted at Western Pennsylvania Cares was testimonial under *Crawford* and its progeny[.]").

[5] For example, in *Commonwealth v. Giles*, 182 A.3d 460 (Pa. Super. 2018), the victim was cross-examined regarding her forensic statement. Defense counsel asked, "Now, do you remember when you were interviewed by Dr. Susan Nathan, you told her that the first incident occurred in July?" *Id.* at 462. The victim said, "No," followed by counsel stating, "You don't remember that?" That cross-examination was clearly misleading. "We point out that **nowhere** in the transcript of the forensic interview does [the victim] ever mention that the first incident, or any of the incidents for that matter, occurred in July." *Id.* And while the issue in that case was whether the forensic interview was admissible as a prior consistent statement, it is telling that the Commonwealth fails to cite a comparable example of cross-examination that blatantly misrepresented what the witness actually said.

**II.**

Rule 613 does not justify admission of the entire videotape

The Majority agrees that the trial court erred in admitting the evidence and further determines that introducing the evidence was not harmless beyond a reasonable doubt. Majority Op. at 19 ("Given these clear violations of Rule 106 and its purpose, we decline to find the trial court's error in this respect harmless."). That statement does not explain why the Majority is unconvinced that the error was not harmless, because the purpose of a rule is not a factor in a harmless error analysis. *See Commonwealth v. Story*, 383 A.2d 155, 164 (Pa. 1978) ("We adopt the standard that an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict."). The Majority therefore envisions a scenario in which this evidence, while deemed erroneously admitted under Rule 106 and not harmless beyond a reasonable doubt under that rule, may simultaneously be admissible under Rule 613 (and therefore not introduced erroneously at all).[6]

Instead of remanding, I would simply address the Rule 613 question. The Superior Court is in no better position to address its applicability, and the Commonwealth declined to address Rule 613 before this Court. Additionally, in its Superior Court brief the Commonwealth agreed that Rule 613 does not apply under governing Superior Court precedent:

---

[6] In this respect the Majority appears to direct the Superior Court to determine if the "right-for-any-reason" doctrine applies. *See, e.g.*, Justice Thomas G. Saylor, *Right for Any Reason: An Unsettled Doctrine at the Supreme Court Level and an Anecdotal Experience with Former Chief Justice Cappy*, 47 Duq. L. Rev. 489, 491–92 (2009) (explaining, as a hypothetical example, that the doctrine may be employed to affirm a trial court's hearsay ruling by substituting the correct hearsay exception on appeal).

> [A]ny motive that A.W. would have had to lie about the actions that she attributed to Raboin would have existed at the time that she submitted to the forensic interview. Therefore, it would appear that Judge Rangos, as outlined in *Bond*, was not justified in admitting the video as a prior consistent statement to rehabilitate the victim.

Commonwealth's Brief, 976 WDA 2018, at 18 (footnote omitted).

I see no reason to further delay disposition of this case. Indeed, the Superior Court will be bound to follow its *Bond* precedent, and I would explicitly endorse the *Bond* Court's prior consistent statements analysis. *See Bond*, 190 A.3d at 667-70. Finally, both parties have already briefed whether the error is harmless beyond a reasonable doubt. We should thus decide that issue based upon the traditional harmless error analysis articulated in *Story*.

In my view, the evidence was not admissible as a prior consistent statement. While the trial court ruled that the evidence was admissible on this ground, *see supra* note 2, it later conceded that it erred in admitting this evidence and determined that its error was harmless beyond a reasonable doubt. Because the ultimate question is whether the trial court's judgment will be affirmed, I briefly address that issue.

The Rule states, in pertinent part:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.**
> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
>> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

(2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613.

Arguably, some of the cross-examination touched on an implicit or explicit accusation of the grounds listed in Rule 613(c)(1) as counsel attempted to establish that A.W. omitted some details from her forensic statement and/or changed her version of events in ways that suggested her testimony did not meet the beyond a reasonable doubt threshold needed to convict. For instance, trial counsel asked A.W., "Did you tell the forensic examiner that he would call you in from the bedroom? Did you tell him that?" Her response "I think I did" treads closely to a charge that A.W. does not actually remember what she said at the forensic interview. Of course, as a strictly technical matter counsel was not accusing A.W. of not remembering what she said at the forensic interview but rather asking what she did say, with her response indicating uncertainty. Certainly, the Commonwealth could have objected to these questions and/or presented A.W. with the specific prior consistent statements on redirect.

But we need not parse out which statements may have been justifiably admitted as prior consistent statements and which were not. It suffices to say that the trial court erred because a court abuses its discretion when it admits statements that do not directly address the rationale for admitting the prior consistent statement. Admitting prior consistent statements that respond to an accusation of fabrication would not justify permitting statements that had nothing to do with that charge.[7] *Compare Commonwealth*

---

[7] The McCormick on Evidence treatise offers the following commentary on this point:

*v. Fisher*, 290 A.2d 262, 268 (Pa. 1972) ("The rule of permissible rehabilitation is not so broad as to permit the use of hearsay on one subject to support the impeached testimony on another subject."). The Majority recognizes this same point with respect to its Rule 106 analysis. Majority Op. at 19 ("Although some of the interview served to correct the misleading impression created during defense counsel's cross-examination of the victim and detective, the vast majority of it did not.").

Here, it cannot be the case that every hearsay statement on the tape qualified as a prior consistent statement with respect to a point raised on cross-examination or through other evidence. Accordingly, Rule 613(c) cannot justify the trial court's ruling on this record.[8]

---

> The two most common rehabilitative methods are: (1) introduction of supportive evidence of good character of the witness attacked, and (2) proof of the witness's consistent statements. The basic question is whether these two types of rehabilitation evidence represent a proper response to the specific methods of impeachment that have been used. The general test of admissibility is whether evidence of the witness's good character or consistent statements is logically relevant to explain the impeaching fact. The rehabilitating facts must meet the impeachment with relative directness. The wall, attacked at one point, may not be fortified at another, distinct point.

Kenneth S. Broun, et al., 1 MCCORMICK ON EVIDENCE § 47 (8th ed.).

[8] More accurately, the trial court would have erred had it done so, because we know the trial court did not identify any charge of faulty memory. Trial Court Opinion, 11/14/2018, at 10 ("This Court permitted the playing of the video in rebuttal as a prior consistent statement. As stated above, the Court relied upon *Willis* and *Hunzer*. This Court would again assert that the harmless error doctrine applies.").

**III.**

The error was not harmless beyond a reasonable doubt

Nor was the error harmless beyond a reasonable doubt. The harmless error analysis must be the same for an erroneous admission under Rule 106 as it is for an analysis under Rule 613. The introduction of statements that corroborate trial court testimony is generally deemed harmless because it is assumed a witness has always told a consistent story. "Ordinarily, that one has always said the same thing is subsumed in their testimony and need not be buttressed by evidence of prior consistency, unless that consistency, by allegation of recent fabrication is challenged." *Commonwealth v. Hutchinson*, 556 A.2d 370, 372 (Pa. 1989). Thus, in line with the trial court's opinion, appellate courts often agree that any such evidence erroneously introduced is cumulative of what was presented at trial. The Commonwealth likewise argues that the evidence was cumulative. Commonwealth's Brief at 12 (arguing that the error was harmless beyond a reasonable doubt "because the accusations included in the interview about which Raboin now complains—that the victim considered him to be a violent, abusive man of whom she was fearful—were merely cumulative of the sentiments that she conveyed during her trial testimony"); *id.* at 39 (arguing that the statements were "substantially similar to the erroneously admitted evidence.").

Recently, in *Commonwealth v. Hamlett*, 234 A.3d 486 (Pa. 2020), this Court confronted a case that largely mirrors the present controversy; indeed, it involved the same trial judge permitting the Commonwealth to play a videotaped recording of a forensic interview as a prior consistent statement pursuant to *Willis* and *Hunzer*. However, in *Hamlett*, unlike the present case, *Bond* was not decided until after the parties

submitted their briefs. As a result, the Commonwealth did not claim that the error was harmless beyond a reasonable doubt. The Superior Court panel held that the trial judge erred by admitting the evidence, but sua sponte concluded that the error was harmless beyond a reasonable doubt. The panel did not address Rule 106.

We accepted appeal in *Hamlett* to determine whether an appellate court can raise harmless error sua sponte and affirmed. Notably, our grant was limited to the Superior Court's ability to do so and we did not address whether it correctly resolved that point. *Id.* at 489 n.2 (stating that the question presented did not "encompass the narrower question of whether the Superior Court may have erred in the substantive aspects of its harmless-error review"). In the present circumstances, where the substantive question of whether the error was harmless beyond a reasonable doubt is before us, I conclude it is not. I am persuaded by the salient aspects of Justice Wecht's dissenting opinion in *Hamlett* challenging the notion that an error can be dismissed as merely cumulative, and thus harmless, when its cumulative nature was the very reason that it was error. Under this circumstance, an appellate court may not conclude, beyond a reasonable doubt, that the erroneously admitted video corroboration of critical testimony did not influence the jury's assessment of the credibility of competing evidence. *Id.* at 519-21 (Wecht, J., dissenting).

As this case involves virtually identical factual circumstances, the problems identified by Justice Wecht appear here, too. The point that an error cannot be dismissed as cumulative and thus harmless when the cumulative nature was the very reason it was error is starker here than in *Hamlett*, because here the Commonwealth argues that the admission of the videotape was **needed** pursuant to the rule of completeness based on Raboin's cross-examination. Thus, in the Commonwealth's telling, the impeachment was

so misleading that the jury came away confused as to what A.W. may have said in the forensic interview, thereby obligating the trial court to permit the Commonwealth to play the tape for the jury. But if that is true, then the tape cannot possibly be cumulative of her trial testimony. Under the Commonwealth's theory, the tape supplies context that, when taken together with the direct and cross examinations, presents a cohesive picture of A.W.'s testimony. In this sense the forensic interview is supplementary, not cumulative. And I fail to see how an appellate court can figure out what effect such supplementary material had on the jury's credibility assessments. The Commonwealth's harmless error argument asks us to ignore the tape because it was simply cumulative, i.e., unnecessary. But if the statements were unnecessary then the Commonwealth's claim that the videotape was needed under Rule 106 cannot be correct.

Second, and related to the foregoing, I agree with Justice Wecht that, at a minimum, in a he-said/she-said conflict such as this one, the harmless error beyond a reasonable doubt standard simply cannot apply when the accuser's credibility is bolstered by the playing of a videotape that corroborates the trial testimony. *Id.* at 501 (Wecht, J., dissenting) (observing that "harmless error necessitates that the evidence be **uncontradicted**—a requirement that prevents the reviewing court from making questionable assessments of the credibility of competing evidence from its inherently limited appellate perspective"). There is no evidence to convict other than A.W.'s testimony. We cannot cite overwhelming evidence of guilt as a basis to affirm the conviction where the only direct evidence against Raboin is the word of his accuser.

Critically, I am highly persuaded by Raboin's argument that the point at which the tape was admitted and played severely undermines the Commonwealth's argument that

the error was harmless. The Commonwealth was permitted to play the evidence in rebuttal. It was the last thing that the jury saw before it received instructions and debated whether the Commonwealth met its burden. Whatever effect Raboin's cross-examination had would be diminished by viewing a testimonial videotape that was not subject to cross-examination. In fact, the rebuttal took place three days after A.W.'s testimony, long after Raboin confronted his accuser.

Furthermore, as discussed earlier in this opinion, the Confrontation Clause demands that the defendant be given an opportunity to confront his accuser. *See supra* note 4. The trial court's decision to let the jury see and hear an accuser for a second time without any subsequent cross-examination flouts that guarantee. It is little comfort to a defendant that he previously was able to cross-examine the victim when the trial court permits the jury, right before deliberation, to see the victim's interview under circumstances which are designed to be non-adversarial. I find showing the jury a version of the events that was not subject to adversarial testing highly problematic. *Coy v. Iowa*, 487 U.S. 1012, 1020 (1988) ("That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs."). Thus, the trial court's conclusion that this error was harmless beyond a reasonable doubt because Raboin previously cross-examined A.W. is unpersuasive. Raboin could not cross-examine the tape, and the myriad audio and visual clues that it contains were not subject to any adversarial testing. I find that there is an obvious risk that the jury was swayed by the presentation of the video interview immediately before its deliberations.

Third, the Commonwealth's substantive argument in support of finding no harmless error cites, in support, the Superior Court's decision in *Commonwealth v. Lively*, 231 A.3d 1003, 1009 (Pa. Super. 2020), which, in turn, cited and discussed the *Bond* Court's harmless error analysis. The Bond Court's erroneous analysis of harmless error states:

> Next, we consider the Commonwealth's argument that the trial court's error was harmless.
>
>> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that [a] defendant is entitled to a fair trial but not a perfect one.
>
> *Commonwealth v. Allshouse*, 614 Pa. 229, 36 A.3d 163, 182 (2012) (quoting *Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248, 251 (1981) ).
>
> On this point, we turn for guidance to [*Commonwealth v.*] *Busanet*[,54 A.3d 35, 66 (Pa. 2012)]. There, the defendant alleged his appellate counsel was ineffective for failing to challenge the trial court's admission of a witness's prior consistent statement. *Busanet*, 54 A.3d at 65. The witness was the Commonwealth's "key witness," and he testified that he was with the defendant when the defendant fired a gun at the victim in retribution for a robbery. *Id.* Defense counsel examined the witness on his motive to obtain favorable treatment from the Commonwealth in his own case. *Id.* The Commonwealth introduced a prior consistent statement—the witness's written statement that he gave to police 15 days after the crime occurred. *Id.* Trial counsel objected because the witness already had a motive to lie at that point, but the trial court overruled the objection. *Id.* at 66. Appellate counsel did not pursue the issue on direct appeal.
>
> The Supreme Court found no ineffective assistance of counsel because the defendant failed to establish prejudice: "Nevertheless,

even assuming for purposes of argument that the trial court erred by admitting [the witness's] prior statement under Pa.R.E. 613(e) [sic], we agree with the PCRA court that such a claim would not have entitled Appellant to relief on appeal[.]" *Id.* at 67. Trial counsel "meticulously cross examined [the witness] with evidence of his motive to testify favorably for the Commonwealth[.]" *Id.* "Further, on re-cross examination of [the witness], trial counsel painstakingly pointed out to the jury that when [the witness] made the prior statement, he was concerned about being charged in connection with the shooting." *Id.* The Supreme Court also noted other "overwhelming" evidence of the defendant's guilt, including other witnesses, ballistics evidence, and the defendant's own statements. *Id.* Thus, any error on the part of the trial court or counsel did not prejudice the defendant in *Busanet.*

We find *Busanet* instructive. …

*Bond*, 190 A.3d at 670-71.

In addition to the previous observations challenging this type of harmless error analysis, *Busanet* involved a different legal standard. The *Busanet* decision involved a claim of ineffective assistance of counsel. To prevail on that type of claim, a petitioner must establish that the error was prejudicial, defined as a reasonable probability that the outcome of the proceeding would have been different but for the error. Putting aside the fact that the Commonwealth bears the burden of showing that the error was not harmless beyond a reasonable doubt, the legal standard for harmless error is more favorable to the defendant. In other words, a defendant can prevail on direct appeal for a preserved error, i.e., he or she receives a new trial because the Commonwealth could not establish that the error was harmless beyond a reasonable doubt, yet not receive a new trial for the exact same unpreserved error during collateral proceedings. As we explained in *Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014):

> We agree with the Commonwealth that the Superior Court did not utilize the correct standard in concluding Appellee was prejudiced by trial counsel's failure to object to the

prosecutor's references to Appellee's post-arrest silence during the cross-examination of Appellee. The panel applied the "harmless error" standard in determining whether the *Strickland/Pierce* "prejudice" prong was met. However, as this Court suggested in *Spotz I,* "the test for prejudice in the ineffectiveness context is more exacting than the test for harmless error, and the burden of proof is on the defendant, not the Commonwealth." *Spotz I,* 582 Pa. at 227, 870 A.2d at 834 (citations omitted). As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error.

*Id.*

The *Bond* Court's analysis treated harmless error and prejudice as the same. It determined that a trial counsel's objection to this type of evidence presents the same considerations in terms of whether a new trial is warranted as in a case where a petitioner is required to establish prejudice in a collateral proceeding. That is manifestly incorrect.[9]

For the foregoing reasons, in my view the trial court erred in allowing the Commonwealth to play the child victim's forensic interview in rebuttal and the error was not harmless beyond a reasonable doubt. I would grant a new trial.

Justices Saylor and Wecht join this concurring and dissenting opinion.

---

[9] The *Bond* Court's harmless error analysis was an alternative to its holding that the evidence was actually properly admitted. *Bond*, 190 A.3d at 673-74 (concluding that the videotape was admissible under Rule 106 because counsel "cross-examined [the victim] extensively about the interview"; approvingly quoting prosecutor's trial argument that counsel "went line by line towards what she's transcribed"). Having concluded that the evidence was properly admitted, there was no need to discuss harmless error.