J-S26037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHIL LEONE, | : | |
| | : | |
| Appellant | : | No. 3307 EDA 2017 |

Appeal from the Judgment of Sentence June 5, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0000626-2016

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANUDM BY STEVENS, P.J.E.:          **FILED NOVEMBER 06, 2018**

Appellant Phil Leone appeals from the judgment of sentence entered in the Court of Common Pleas of Northampton County on June 5, 2017, following his convictions of Involuntary Deviate Sexual Intercourse with a child (IDSI) and related offenses.[1]   After review, we vacate the portion of Appellant's sentence requiring him to comply with SORNA,[2] affirm in all other respects, and remand for further proceedings.

---

[1] Appellant was convicted of IDSI, 18 Pa.C.S.A. § 3123(b); Aggravated Indecent Assault(Complainant less than 13 years), 18 Pa.C.S.A. § 3125(a)(7); Indecent Assault:  course of conduct, 18 Pa.C.S.A. § 3126(a)(7); Endangering the Welfare of a Child: course of conduct, 18 Pa.C.S.A. § 4304(b); Corruption of Minors: sexual nature, 18 Pa.C.S.A. § 6301(a)(1)(ii); Sexual Abuse of Children: photographing, videotaping, depicting on computer or filming sexual acts, 18 Pa.C.S.A. § 6312(b)(2); and Sexual Abuse of Children: child pornography, 18 Pa.C.S.A. § 6312(d)(1).
[2] The Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10-9799.41.

---

*   Former Justice specially assigned to the Superior Court.

Appellant's convictions arose following his repeated sexual abuse of the victim, C.S., from 2005-2011, when she was between the ages of five and twelve years old. N.T., 2/27/17, at 106-08. Appellant is the paramour of C.S.'s grandmother and served as a caretaker for C.S. *Id*. at 55-57. The evidence presented at trial revealed that when Appellant and C.S. were alone in Appellant's bedroom or in the basement of the grandmother's home, Appellant would force C.S.'s hand to touch his penis, instruct her to perform fellatio upon him, show her movies containing sex scenes, and require her to view images of child pornography. Appellant would fondle C.S.'s breasts, manually touch her vagina and buttocks, penetrate her vagina and anus with his finger, photograph her genitals, and bathe her. *Id*. at 62-85, 94. Appellant repeatedly told C.S. not to tell anyone about these encounters because she "would get in trouble," and she believed him because she "knew it was the wrong thing to do." *Id*. at 74, 79, 89. Appellant would buy C.S. toys or give her money "when [she] would do his things for him." *Id*. at 92-93.

As she got older, C.S. was afraid her younger sister would become the target of Appellant's abuse were C.S. to try to resist him. *Id*. at 95, 100. However, when she was twelve or thirteen years old, C.S. refused Appellant's advances and revealed the abuse to a friend, E.L. at school. *Id*. at 92, 101-04. When C.S. started to resist Appellant, he told her that she was worthless and was "part boy and part girl" and called her a "Hermaphrodite." *Id*. at 99. When she was about fifteen years old, C.S. revealed the abuse to her mother

who informed the Easton Police Department police. N.T., 2/28/17, at 267-71.[3] C.S. detailed for the police the abuse and the rooms in which it occurred and identified the computers and other electronic devices on which Appellant stored pornographic images. N.T., 2/27/17, at 62-68, 87-92; N.T., 2/28/17, at 167-75. As a result, C.S.'s grandmother no longer speaks to C.S. which C.S. stated is very difficult for her, because she loves her grandmother very much. *Id*. at 75.

Based upon the information C.S. provided, the police executed a search warrant at Appellant's residence on March 17, 2014, at which time numerous electronic devices were seized and sent for forensic analysis. N.T., 2/28/17, at 283-95. Images of child pornography that had been downloaded between 2012 and 2013 were found on the devices. N.T., 3/1/17, at 383-401. A single laptop could not be analyzed because it was password-protected, and attempts to bypass the code were not successful. *Id*. at 401-02.

Appellant testified in his own defense at which time he unequivocally denied ever having touched C.S. in an inappropriate way or taking sexual or inappropriate photographs of her. *Id*. at 441, 467. He explained that "from the first time [C.S] was dropped off at [his] apartment, [he] assumed the role of caretaker" and bought C.S. and her brother food, toys and clothing. *Id*. at 445-47, 450-51. He stated "everybody in the family" had the use of his computers and informed police that at one point he had found pictures of a

---

[3] C.S. was born in April of 1999, and initially reported the abuse in February of 2014.

Russian nudist camp on his computer that he could not delete despite repeated attempts to do so. *Id*. at 460-61, 473. Appellant also related that he took C.S. "bra shopping," and felt he was particularly suited to do so as he had experience dressing women as a result of his work as a certified nurse's assistant. He claimed he was careful not to look at her changing into the garments. *Id*. at 465.

Following his jury trial convictions, the trial court held a hearing in accordance with section 9799.24(e) of SORNA on June 5, 2017, and at the conclusion of said hearing, found Appellant to be an SVP and informed him of his registration requirements. N.T., 6/5/17, at 44-48. Also on June 5, 2017, Appellant was sentenced to an aggregate term of 337 months to 1,056 months (28 years to 88 years) in prison. N.T., 6/5/17, at 42-44.[4] Appellant received an extension of time in which to file a post-sentence motion, and he filed the same on July 5, 2017. Following its review of Appellant's motion and the parties' submitted briefs, the trial court denied Appellant's post-sentence motion in its October 5, 2017, Order and Statement of Reasons.

Appellant filed a timely notice of appeal on October 11, 2017. On October 13, 2017, the trial court issued its order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a concise statement of the errors complained of on appeal, and Appellant filed the same on October 17, 2017.

---

[4] The trial court indicated that each of the sentences were at the high end of the standard range, though it believed sentences in the aggravated range for each crime would have been justifiable. *Id*. at 43.

- 4 -

The trial court filed its Statement Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) wherein it indicated that each of the errors Appellant raised on appeal echoed those that he had presented in his post-trial motion. The trial court indicated that it had thoroughly discussed each of those claims in its Opinion and Order of October 5, 2017, and indicated that for the reasons it expressed therein, Appellant's post-trial motion properly was denied in its entirety.

In his brief, Appellant presents the following Statement of Questions Involved:

> A.    Appellant's conviction under 18 Pa.C.S.A. § 6312(b) was against the weight of the evidence[.]
>
> B.    The [t]rial [c]ourt erred in admitting the photographs marked as Commonwealth Exhibits 1 and 36-38 because they were irrelevant or unduly prejudicial.
>
> C.    The [t]rial [c]ourt erred in refusing to give the prompt complaint jury instruction.
>
> D.    The [t]rial [c]ourt erred in failing to sustain Appellant's objection to the Commonwealth's closing argument that Appellant had a propensity to engage in future violence.
>
> E.    The [t]rial court erred in overruling objections to hearsay statements of C.S.
>
> F.    The [t]rial [c]ourt erred in denying Appellant's motion to sever the 18 Pa.C.S.A. § 6312(d)(1) offense.
>
> G.    The [t]rial [c]ourt erred in refusing to modify its sentence where the sentence was manifestly excessive.
>
> H.    The [t]rial [c]ourt erred in refusing to vacate Appellant's SVP designation.

      I.     The [t]rial [c]ourt erred in refusing to classify Appellant as a Tier I sex offender only.

Brief for Appellant at 6-7. We will consider these issues in turn.

Appellant first challenges the weight of the evidence to sustain his conviction of sexual abuse of children under 18 Pa.C.S.A. § 6312(b)(2) which reads as follows:

> **(b) Photographing, videotaping, depicting on computer or filming sexual acts.—**
>
>                       \*\*\*
>
> (2) Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act commits an offense.

18 Pa.C.S.A. § 6312(b)(2). Appellant maintains that the conviction and sentence on this charge should be vacated because the police never recovered any photographs taken by Appellant of C.S., Appellant testified that he never took such photographs of the child, and the only evidence offered by the Commonwealth in support of that charge was C.S.'s testimony. Appellant reasons that "the facts supporting the conclusion that these photographs were never taken so clearly outweighs the evidence to the contrary that [Appellant']s conviction on this charge constitutes a denial of justice." Brief of Appellant at 17-18.

Our Supreme Court has articulated the standard applied to a weight of the evidence claim as follows:

The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

***Commonwealth v. Cash***, 635 Pa. 451, 466-67, 137 A.3d 1262, 1270 (2016) (internal citations omitted). A trial court's determination that a verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons" for denying a new trial. ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 529 (Pa.Super. 2016) (quoting ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa.Super. 2003) (quotation omitted). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. ... Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion[.]" ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa.Super. 2015) (citation omitted).

In addition, a challenge to the weight of the evidence must first be raised at the trial court level "(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *Commonwealth v. Akrie*, 159 A.3d 982, 989 (Pa.Super. 2017) (citation omitted). Herein, Appellant preserved this challenge by raising it in his post-sentence motion filed on July 5, 2017. In its October 5, 2017, Order, the trial court made an explicit determination on the weight of the evidence as follows:

> In order for a defendant to be convicted of the crime at issue, the Commonwealth must prove, beyond a reasonable doubt, that a defendant "knowingly photograph[ed], videotap[ed], depict[ed], or film[ed] a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such such[.]" *Id*. For purposes of this statute, the term "prohibited sexual act" is defined as "[s]exual intercourse[,] masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction," 18 Pa.C.S. § 6312. Specifically as it relates to this case, [Appellant] was charged with photographing the naked genitals of victim C.S., on multiple occasions.
>
> At trial, the Commonwealth presented the testimony of C.S., who described the circumstances under which [Appellant] photographed her naked genitals on multiple occasions, including in his vehicle and on the floor of her grandmother's bedroom. (N.T. 2/27/17, pp. 82, 87-90). She testified that he stored these images by some electronic means, and would show them to her at times. *Id*. at 90-91. At all pertinent times, C.S. was a minor. No physical evidence, such as photographs, was presented at trial. Testimonial evidence was presented that the Commonwealth seized various electronic equipment, including computers, flash drives, and a camera, from [Appellant's] home. One of the computers could not be unlocked by law enforcement. No images of C.S. were recovered from the computers or camera. [Appellant] denied taking any inappropriate photographs of C.S.
>
> Despite these evidentiary conflicts, we found that the jury properly concluded, on the basis of the testimony of C.S., that [Appellant] committed the crime at issue. The testimony of C.S.

was sufficient to sustain a conviction for this charge, and the absence of any photographic evidence does not defeat her testimony. Such images are transient and easily deleted. Moreover, the detailed testimony of C.S. was highly credible. Accordingly, we find that the conviction for Sexual Abuse of Children -photographing, videotaping, depicting on computer or filming sexual acts in no way shocks the conscience. [Appellant] is not entitled to a new trial on this ground.

Trial Court Order, filed 10/5/17, at 3-4.

Appellant essentially asks this Court to reassess the credibility of the witnesses and reweigh the testimony and evidence presented at trial. We cannot, and will not, do so. It was for the jury, as the fact-finder, to determine the credibility of the witnesses and the weight to be accorded thereto. *Commonwealth v. Simmons*, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995). Accordingly, this claim fails.

Appellant next asserts certain photographs admitted into evidence were unduly prejudicial. Appellant argues that the sole purpose of the admission of a photograph of C.S. at the age of five was to inflame the jury and that any probative value of the image was outweighed by its prejudicial effect. Brief for Appellant at 19-20. Appellant further states several photographs of an adult male sleeping shirtless with several little girls were not of a pornographic nature, irrelevant, and unduly prejudicial and, in fact, depicted Appellant's deceased brother, shirtless and sleeping with his grandchildren in bed. *Id*. at 20.

When considering the admission of evidence it is axiomatic that:

> [q]uestions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record."

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1036 (Pa.Super. 2014) (citations and quotation marks omitted), appeal denied, 627 Pa. 758, 99 A.3d 925 (2014).

> Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

*Jacobs v. Chatwani*, 922 A.2d 950, 963 (Pa.Super. 2007), appeal denied, 595 Pa. 708, 938 A.2d 1053 (2007). With regard to photographic evidence, it is well-established that:

> [a] determination of whether photographic evidence alleged to be inflammatory is admissible involves a two-step analysis. First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury. The availability of alternative testimonial evidence does not preclude the admission of allegedly inflammatory evidence.

- 10 -

***Commonwealth v. Sanchez***, 614 Pa. 1, 42, 36 A.3d 24, 49 (2011) (citations

and quotation marks omitted). In addition, "[t]he law presumes that the jury

will follow the instructions of the court." ***Commonwealth v. Chmiel***, 612 Pa.

333, 457, 30 A.3d 1111, 1184 (2011) (citations omitted).

The trial court explained the basis for its evidentiary ruling as follows:

> Prior to trial, the Commonwealth requested a ruling permitting the admission of four photographs. The Court ordered that the photographs were admissible, provided that a proper foundation was laid at trial. The Commonwealth did lay a proper foundation and presented the photos at trial. Those photos were labeled as Exhibits 1, 36, 37, and 38. Exhibit 1 was a photograph of C.S. at the age she was when the abuse began. Exhibits 36-38 were photographs recovered from [Appellant's] electronic devices, depicting an adult male and several little girls asleep together.
>
> The Commonwealth offered Exhibit 1, the photo of C.S. at the age of five, during the direct testimony of C.S. The photo was offered for the purpose of showing how C.S. looked when [Appellant] began to sexually abuse her. The Commonwealth contended that the photograph was relevant to the credibility of C.S., insofar as it depicted her as a small and vulnerable young person who would have been easily overborne by [Appellant] into complying with his sexual demands, in contrast to the physically strong young adult woman that she was at the time of trial. We found the photograph to be relevant for that purpose, and, finding that there was nothing inflammatory or prejudicial about the photo, admitted it for that purpose.
>
> The Commonwealth offered Exhibits 36-38, the photos of an adult male and several children asleep together, during the testimony of Leon Korejwo, a digital forensic examiner with the Pennsylvania State Police, who analyzed the electronic devices that were seized from [Appellant]. He testified that those images were retrieved from a computer hard drive belonging to [Appellant]. Again, those photos depicted a shirtless adult male sleeping with several little girls. While there was nothing pornographic about what was depicted in those photographs, and while neither [Appellant] nor C.S. was depicted in those photos, they were offered by the Commonwealth to support the testimony of C.S. to the effect that [Appellant] would often come to her while she was asleep to either (a) bring her into her grandmother's

basement to perform sex acts, or (b) photograph her genitals. Insofar as the photographs tended to support a conclusion that [Appellant] had a prurient interest in sleeping young girls, which would support the testimony of C.S., we found that they were relevant to the issue of her credibility. Moreover, we found there to be nothing about the photographs that was [i]nflammatory or unduly prejudicial to [Appellant], and thus they were admitted.

Trial Court Order, filed 10/5/17, at 4-6.

We have reviewed the trial transcripts and the photographs at issue and find that the photographs are not inflammatory by their very nature and agree with the trial court's analysis as to their relevance. Indeed, as C.S. testified, Exhibit 1 is simply a portrait of her taken when she was about five years old. N.T., 2/27/17, at 107. Exhibits 36-38 are depictions of sleeping children, and as the trial court noted, were relevant in light of C.S.'s testimony that Appellant took pictures of her while she slept and routinely woke her in order to perpetrate his abuse. N.T., 2/27/17, at 87-90; N.T., 3/1/17, at 400. Moreover, the trial court properly instructed the jury as to the elements and burden of proof for a conviction of sexual abuse of children-child pornography, and it was within their purview to determine the pornographic nature, if any, of those images. N.T., 3/1/17, at 577-78. Thus, no relief is due.

Thirdly, Appellant avers the trial court erred in declining to provide the jury with the prompt complaint instruction. In doing so Appellant relies upon this Court's decision in **Commonwealth v. Sandusky**, 77 A.3d 663 (Pa.Super. 2013), wherein we held that the application of the prompt complaint instruction must be determined on a case-by-case basis, even

where the victim is a child. We find Appellant waived this claim for appellate review.

During the charging conference, counsel for Appellant asked the trial court to instruct the jury as to Pennsylvania Suggested Standard Criminal Jury Instruction 4.13A which concerns the failure of a sexual assault victim to make a prompt complaint. Noting that C.S. was an "incredibly young child when this started and we are certainly talking about a man who was an authority figure with her[,]" the trial court indicated it would not give the instruction. N.T., 3/1/17, at 507. At this juncture, defense counsel stated, "note my exception" and argued that the conduct concluded when C.S. was twelve years old, yet the disclosure was not until some years later. *Id*. at 507-08. In response, the trial court informed counsel that it "would not preclude [counsel] from making that argument[.]" *Id*. at 508. Notwithstanding, following the jury charge, the trial court questioned whether counsel had "[a]ny objections or any corrections[]" to which defense counsel responded, "I have nothing." *Id*. at 579.

> A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver. Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary.

*Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa.Super. 2010) (citations omitted). Because trial counsel failed to lodge any objection to the court's

- 13 -

instructions at the conclusion of the jury charge, any claim related to the form or content of the charge is waived. *Id*.

In his fourth claim, Appellant posits the prosecutor made improper statements in her closing argument. Specifically, Appellant highlights the following comments: "This [Appellant] is an individual that will stop at nothing, who will continue to manipulate and lie at every turn. . . . Tonight you can give [C.S] the first sound night's sleep she's had in over a decade. You can tell her, you are safe. You can tell her, this is over." N.T., 3/1/17, at 554. Counsel objected at the conclusion of the Commonwealth's closing argument, and during the ensuing sidebar discussion argued the statements "suggested to the jury improperly that they had to convict [Appellant] in this case so he wouldn't do this again in the future. That's an improper argument to make." *Id*. at 555. The trial court responded as follows:

> I was –I actually thought that that's where she was headed and I was waiting for it, but I don't think she went there. Again, I know exactly what you're talking about, but she immediately turned it to what he had done in the past, not whether he would do it in the future.

*Id*.

In his brief, Appellant argues he was entitled to a mistrial because these remarks constituted a clear attempt by the Commonwealth to persuade the jury to convict Appellant based upon his future dangerousness in violation of this Court's decision in *Commonwealth v Butler*, 647 A.2d 928, 935 (Pa.Super. 1994), appeal denied, 540 Pa. 593, 655 A.2d 983 (1994) (stating

a prosecutor's reference to future dangerousness in closing argument is improper).[5] *Id*. at 25.

We review the trial court's denial of a motion for mistrial for an abuse of discretion. ***Commonwealth v. Brown***, 134 A.3d 1097, 1106 (Pa.Super. 2016) (citation omitted), appeal denied, 636 Pa. 657, 145 A.3d 161 (2016). When considering the ramifications of a prosecutor's improper remark during closing arguments, the Pennsylvania Supreme Court has stated:

> In reviewing an assertion of prosecutorial misconduct, our inquiry center[s] on whether the defendant was deprived of a fair trial, not deprived of a perfect trial. It is well-settled that a prosecutor must be free to present his or her arguments with logical force and vigor. Comments grounded upon the evidence or reasonable inferences therefrom are not objectionable, nor are comments that constitute "oratorical flair." Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. Consequently, this Court has permitted vigorous prosecutorial advocacy provided that there is a reasonable basis in the record for the [prosecutor's] comments. A prosecutor's remarks do not constitute reversible error unless their unavoidable effect would prejudice the jurors, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Finally, we review the

---

[5] It is noteworthy that the ***Butler*** Court ultimately found that the prosecutor's remark, "Wow! Let's acquit this man and have him gun down somebody and have him shoot them 15 times in cold blood[]" could not be viewed in isolation to characterize it "as an appeal to convict, lest by acquitting, the defendant be loosed upon society to commit more murders." ***Id***. To the contrary, we held that when considered in context, the remark was not meant to be taken as a prediction of future dangerousness and fell short of the standard for prosecutorial misconduct. ***Id***.

allegedly improper remarks in the context of the closing argument as a whole.

*Commonwealth v. Sneed*, 616 Pa. 1, 24, 45 A.3d 1096, 1109–10 (2012) (citations and some quotation marks omitted).

Herein, C.S. testified she participated in therapy which helped her to realize that the abuse was not her fault and she was not to blame. N.T. 2/28/17, at 105. The therapy also helped her to deal with her recurrent nightmares which she described as follows:

> I had nightmares, frequent nightmares that I had over and over again. I was in a room and I was sitting sown on like a stool, and there was a glass and my mother was behind it and she—I remember her crying, and I wanted to go to my mom, but I couldn't move. And [Appellant] was right behind me and I remember I wanted to go to my mom. I wanted to go to my mom, but I couldn't move and I couldn't speak.

*Id*. at 105-06.

With this backdrop, the trial court concluded the prosecutor's comments did not delve into what would happen in the future, but rather harkened back to the lasting effect of Appellant's abuse upon C.S. Following our review of the Commonwealth's closing argument in its entirety, we agree that the Commonwealth was not asking the jury to render a verdict based upon Appellant's future dangerousness. Rather, the prosecutor's claims summarized and commented upon the evidence admitted at trial with permissible oratorical flair that did not have the unavoidable effect of prejudicing the jurors. We discern no basis on which to conclude that the Commonwealth's arguments prejudiced the ability of the jury to weigh the

evidence objectively and render a fair verdict. ***Sneed***, 45 A.3d at 1110. Thus, Appellant's claim of prosecutorial misconduct warrants no relief. ***See Butler***, ***supra***.

Appellant's fifth issue challenges the trial court's allowing of numerous witnesses to testify as to prior out-of-court statements C.S. made pertaining to Appellant's sexual abuse of her. ***See*** Brief for Appellant at 26. Specifically, Appellant challenges statements made by C.S.'s mother, her friend, and Detective Rush of the Easton Police Department and claims that as their testimony served to "strongly corroborate that of C.S." it was clearly prejudicial and resulted in Appellant's convictions. ***Id***. at 28-29.

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established that "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." ***Commonwealth v. Chmiel***, 558 Pa. 478, 738 A.2d 406, 414 (1999). An abuse of discretion requires:
>> not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.
> ***Chmiel***, 738 A.2d at 510, citing ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745, 753 (2000) (citation omitted).

***Commonwealth v. Giles***, 182 A.3d 460, 461-62 (Pa.Super. 2018). In ***Giles***, this Court determined that a grandmother's testimony concerning an interview between the victim and a police officer was admissible as a prior consistent statement in response to cross-examination which inferred fabrication and improper motive on the part of the grandmother. We held the trial court

properly had allowed the Commonwealth to rehabilitate the witness by eliciting prior consistent statements that the victim had made. ***Id***. ***See also*** Pa.R.E. 613(c).[6]

We find the trial court did not abuse its discretion in disposing of this claim. In its October 5, 2017, Order, the court set forth the following explanation of its reasons for determining the statements were admitted properly at trial:

> At trial, the Court admitted testimony from three witnesses who testified that C.S. had disclosed [Appellant's] abuse of her to them on various occasions prior to trial, though those disclosures lacked most of the details regarding [Appellant's] specific conduct to which C.S. testified at trial. These witnesses were (1) a childhood friend of C.S., named E.L.; (2) C.S.'s mother; and (3) Detective Matthew Rush. E.L. testified that C.S. disclosed the abuse to him when C.S. was 12 or 13 years old, in seventh grade. C.S. was almost 18 years old at the time of trial. C.S.'s mother testified that C.S. disclosed the abuse to her in February 2014

---

[6] Entitled "**(c) Witness's Prior Consistent Statement to Rehabilitate**" this subsection of Pennsylvania Rule of Evidence 613 provides:

> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1)   fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

when C.S. was almost 15 years old, Detective Rush testified to statements that C.S. made to him in connection with the investigation of the crimes charged, days after the disclosure to C.S's mother.

Prior consistent statements are admissible at trial pursuant to Pa.R.E. 613(c), which provides, in pertinent part: "Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose." "It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two." ***Commonwealth v. Willis***, 552 A.2d 682, 692 (Pa.Super. 1988). Moreover, "where the defense is centered upon attacking a witness's credibility consistent with a basis that would permit introduction of a prior consistent statement to rehabilitate, the trial court is afforded discretion to allow anticipatory admission of the prior statement." ***Commonwealth v. Wilson***, 861 A.2d 919, 930 (Pa. 2004).

[Appellant] does not contend that he did not have an opportunity to cross-examine C.S. about the hearsay statements, that he did not make an express or implied charge impeaching C.S,'s testimony, or that the statements were improperly admitted because they were admitted in an anticipatory fashion prior to his own testimony denying the veracity of C.S.'s statements. However, [Appellant] contends in his post-sentence motion that the hearsay statements were not "prior consistent statements" within the meaning of Pa.R.E. 613(c), insofar as they were not made prior to the time at which the improper influence was alleged by him to have arisen. More specifically, [Appellant] contends now that C.S. fabricated her testimony as a result of the influence of her mother, who harbored animosity towards [Appellant] from at least the time when [Appellant] took C.S. shopping for bras at Wal-Mart, when C.S. was 10 years old. While C.S.'s mother may have felt this way, as we noted during the trial there was not [sic] evidence presented that was sufficient to effectively charge that she had expressed these feelings such that C.S. had been influenced to fabricate allegations of sexual abuse.

The evidence presented did show that C.S. was aware, prior to her first disclosure to E.L., that her mother did not like [Appellant], who was the paramour of C.S.'s maternal

grandmother. (N.T. 2/28/17, p.134). This was based at least in part upon the shopping trip to purchase bras for C.S. In her testimony, C.S. testified that when she was approximately 10 years old, [Appellant] took her to Wal-Mart to buy her bras. C.S. testified that she "thought it was weird," and that she "didn't want to be around him," (N.T. 2/27/17, pp. 96, 97). C.S. further testified that she did not voluntarily disclose the purchase to her mother because of those feelings, and that when her mother found out about [Appellant] buying her bras, "she got really, really angry." *Id*. at 97. The testimony of C.S.'s mother is consistent with that of C.S. The mother testified that when she found out that [Appellant] had taken her daughter bra shopping, she argued about it with her own mother, [Appellant's] paramour, and that she demanded to the grandmother that [Appellant] no longer be left alone with C.S. (N.T. 2/28/17, p.230). There was no indication that C.S. was aware of this argument. While the mother testified that she had asked C.S., on an unknown number of occasions prior to the disclosure, whether [Appellant] had been inappropriate with her, there was no evidence that C.S.'s mother had thereby influenced C.S. to make a false disclosure of abuse. Moreover, the timing of those inquiries is unknown. Accordingly, the point in time at which C.S. was effectively charged with fabrication or being subjected to improper influence was the period between the report to police and trial. Therefore, the hearsay statements at issue were properly considered "prior consistent statements" within the meaning of the Rule, and, all of the other requirements for admission having been satisfied, were properly admitted.

Trial Court Order, 10/5/15, at 8-11. Accordingly, we affirm on the aforementioned basis in finding no merit to this claim of error.

Appellant also challenges the denial of his motion for severance, wherein he had sought to have two child pornography charges severed from the remainder of the charges. Appellant states that the offense of child pornography under Pa.C.S.A. § 6312(d)(1) involved an entirely distinct set of facts from those that pertained to the allegations of abuse of C.S. Appellant reasons that none of C.S's allegations of sexual abuse would have been

admissible in a separate trial on the child pornography charges, especially in light of the fact that the alleged abuse would have ceased, at the latest, in 2011, and the pornographic images were not downloaded until 2012, at the earliest. Brief for Appellant at 31.

When considering challenges to a trial court's denial of a motion to sever, this Court has stated:

> [a] motion for severance is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

*Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa.Super. 2010) (citation, ellipses and brackets omitted), appeal denied, 607 Pa. 709, 5 A.3d 818 (2010). Two Pennsylvania Rules of Criminal Procedure govern severance. Rule 582 provides, in relevant part:

**(A) Standards**

> (1) Offenses charged in separate indictments or informations may be tried together if:
> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
> (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). In addition, Rule 583 provides as follows: "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses

- 21 -

or defendants being tried together." Pa.R.Crim.P. 583; **see also Dozzo**, 991 A.2d at 902 (stating that "[u]nder Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime.").

In its Order, the trial court addressed Appellant's challenges to the denial of his motion to sever and explained its reasons for determining Appellant was not entitled to relief. Specifically, the trial court found the crimes were easily distinguishable such that the jury would have no trouble separating the evidence in support of the assault charges and the evidence supporting the pornography charges. The trial court stressed all parties referenced the charges as the "child pornography charges" and the "assault charges." Trial Court Order, 10/5/15, at 12. In addition, the court reasoned that:

> [g]iven that the evidence supporting the child pornography charges was discovered as a result of a search warrant obtained by police during their investigation of the assault charges, we found that the *res gestae* exception would permit the admission of the assault evidence in a separate trial for the child pornography charges, in order to provide for the jury a complete story as to how the child pornography was discovered. To exclude the evidence regarding how the child pornography was discovered would leave the jury to speculate improperly about how the police came to search [Appellant's] computers. Moreover, we found that the evidence of the child pornography would be admissible in a separate trial for the assault charges, in order to corroborate the testimony of C.S. in which she described [Appellant] showing her images of child pornography as a grooming technique.

*Id*.

The charges against Appellant were the result of a single investigation by the Easton Police Department. The set of facts is not complex and the number of individuals involved is limited; therefore, there was no danger of jury confusion as a result of the consolidation. Conversely, had the charges been severed, numerous witnesses would have been required to testify in separate trials at which much of the evidence would have been duplicative. Once again, we agree with the trial court's analysis and determination, and discern no abuse of its discretion.

Appellant, a sixty-seven year old man, further argues his sentence is manifestly excessive as it is effectively a "death sentence" and fails to give credence to his prior record score of zero, his lengthy employment history and his community service. Brief of Appellant at 14-15, 32. This claim implicates the discretionary aspects of his sentence. *See Commonwealth v. Hoag*, 665 A.2d 1212, 1213 (Pa.Super. 1995). We consider this issue mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760–61 (Pa.Super. 2014) (internal citations and quotation marks omitted), appeal denied, 626 Pa. 681, 95 A.3d 275 (2014).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right; rather, an appellant challenging the discretionary aspects of his or her sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. [ ] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006–07 (Pa.Super. 2014) (some citations omitted), appeal denied, 635 Pa. 742, 134 A.3d 56 (2016).

Here, Appellant filed a notice of appeal after preserving the issue by filing a motion to modify sentence, and his brief contains a statement pursuant to Pa.R.A.P. 2119(f). Thus, we consider whether Appellant has raised a substantial question that his sentence is inappropriate, and such a consideration must be evaluated on a case-by-case basis. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003).

A substantial question exists only where an appellant advances a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa.Super. 2000). A claim that a sentence is manifestly excessive may raise a substantial question if the appellant's Pa.R.A.P. 2119(f) statement sufficiently articulates the manner in which the sentence was inconsistent with the Code or contrary to its norms. *Commonwealth v. Mouzon*, 571 Pa. 419, 435, 812 A.2d 617, 627–28 (2002). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of the imprisonment." *Commonwealth v. Moury*, 992 A.2d 162, 171-72 (Pa.Super. 2010) (citation omitted). Indeed, a defendant is not entitled to a "volume discount" for his crimes by having his sentences run concurrently. *Commonwealth v. Austin*, 66 A.3d. 798, 808 (Pa.Super. 2013), appeal denied, 621 Pa. 692, 77 A.3d 1258 (2013).

Here, Appellant asserts in his Rule 2119(f) statement that:

The [t]rial [c]ourt's consecutive high-end standard range sentencing of [Appellant], a 67 year old man, is effectively a death sentence and is manifestly excessive. Such a sentence is contrary to the fundamental norms which underlie the sentencing process and, therefore, presents a substantial question for review. It is also excessive in relation to [Appellant's] rehabilitative needs and the protection of the public.

Brief of Appellant at 15. We find Appellant's Pa.R.A.P. 2119(f) statement fails to raise a substantial question. While Appellant contends his sentence is excessive, he has failed to "set forth the specific provision of the Sentencing Code or the fundamental norm underlying the sentencing process that the trial court violated in imposing the sentence." ***Commonwealth v. Trippett***, 932 A.2d 188, 202 (Pa.Super. 2007). His claim essentially is premised on his argument that the trial court's aggregate sentence is excessive in light of his age and his bald allegations it fails to consider his rehabilitative needs and the public's protection. As this Court recently reiterated, this Court does not accept general assertions of sentencing errors and:

> [w]e consistently have recognized that excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (stating, "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]"), ***appeal denied***, 633 Pa. 774, 126 A.3d 1282 (2015); ***see also Commonwealth v. Ahmad***, 961 A.2d 884, 887 n.7 (Pa. Super. 2008); ***Commonwealth v. Pass***, 914 A.2d 442, 446–47 (Pa. Super. 2006). Additionally, Appellant claims that the trial court failed to consider his mitigating circumstances, specifically his "advanced" age of over seventy years. Appellant's Brief at 50. In ***Commonwealth v. Eline***, 940 A.2d 421 (Pa. Super. 2007), we concluded that an appellant's argument that "the trial court failed to give adequate consideration to [his] poor health and advanced age" in fashioning his sentence does not raise a substantial question. ***Eline***, 940 A.2d at 435. In so concluding, we explained that "[t]his court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." ***Id.*** (citation omitted); ***see Commonwealth v. Disalvo***, 70 A.3d 900 (Pa. Super. 2013) (citations omitted) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial

question for our review."); *see also Commonwealth v. Berry*, 785 A.2d 994 (Pa. Super. 2001) (explaining allegation that sentencing court failed to consider certain mitigating factor generally does not raise a substantial question); *Commonwealth v. Cruz–Centeno*, 447 Pa.Super. 98, 668 A.2d 536, 545 (1995) ("[a]n allegation that a sentencing [judge] 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate,"), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996); *Commonwealth v. Bershad*, 693 A.2d 1303, 1309 (Pa. Super. 1997) (finding absence of substantial question where appellant argued the trial court failed to adequately consider mitigating factors and to impose an individualized sentence). Consistent with the foregoing cases, we conclude that Appellant failed to raise a substantial question with respect to his excessiveness claim premised on the imposition of consecutive sentences and inadequate consideration of mitigating factors.

*Commonwealth v. Radecki*, 180 A.3d 441, 468–69 (Pa.Super. 2018). Accordingly, we conclude that Appellant has failed to raise a substantial question with respect to his excessiveness claim.

Appellant's final two issues pertain to SORNA. First, Appellant asserts his designation as an SVP under SORNA was rendered illegal under the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Muniz*, ___ Pa. _____, 164 A.3d 1189 (2017) and *Commonwealth v. Butler*, 173 A.3d 1212, 1215 (Pa.Super. 2017).[7] In addition, Appellant maintains SORNA

---

[7] In *Muniz*, our Supreme Court held that the registration requirements under SORNA constitute criminal punishment. *Id*. at 1218. In light of *Muniz*, this Court has determined: "[U]nder *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] and *Alleyne* [*v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013)] a factual finding, such as whether a defendant has a mental abnormality or personality disorder that

is applicable only to his conviction for sexual abuse of children, possession of child pornography under 18 Pa.C.S.A. § 6312(d)(1) as that was the sole offense of which he was convicted that occurred after December 20, 2012, the effective date of SORNA.[8]  Brief for Appellant at 35.  While Appellant "concedes

_____

makes him ... likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder." ***Commonwealth v. Butler***, 173 A.3d 1212, 1217 (Pa.Super. 2017) (internal quotations and citations omitted). This Court further held "section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." ***Id.*** at 1218. We therefore concluded that trial courts can no longer designate convicted defendants as SVPs or hold SVP hearings "until our General Assembly enacts a constitutional designation mechanism." ***Id.***

[8] SORNA, at 42 Pa.C.S.A. §§ 9799.10-9799.41, was enacted on December 20, 2011, and became effective on December 20, 2012.  SORNA was recently amended on February 21, 2018, by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018.  In doing so, the Legislature added Section 9799.55 which states:

> **(b) Lifetime registration.**—The following individuals shall be subject to lifetime registration:
> * * *
> (2) Individuals convicted:
>> (i)(A) in this Commonwealth of the following offenses, if committed on or after April 22, 1996, but before December 20, 2012:
>> 18 Pa.C.S. § 3121 (relating to rape);
>> 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse);
>> 18 Pa.C.S. § 3124.1 (relating to sexual assault);
>> 18 Pa.C.S. § 3125 (relating to aggravated indecent assault); or
>> 18 Pa.C.S. § 4302 (relating to incest) when the victim is under 12 years of age; ...

that SORNA's Tier l registration requirement should apply to his conviction for possession of child pornography, thereby requiring a 15-year registration period[,]" he reasons that he could not have had fair warning of SORNA's penalties at the time he committed the other offenses which occurred between 2005 and 2011. *Id*. at 35-36.

In this case, the trial court held a sentencing and an SVP hearing in accordance with Section 9799.24(e) of SORNA on June 5, 2017.[9] At the conclusion of the hearing, the trial court found Appellant to be an SVP and sentenced him as previously stated. Following the denial of his post-sentence motion, Appellant filed a notice of appeal on October 11, 2017. While Appellant's appeal was pending, this Court decided *Butler* on October 31, 2017, which deemed unconstitutional the current mechanism for imposition of SVP status used in the present case. In finding that Appellant is not entitled to the removal of his designation as an SVP or the removal of his registration requirements under SORNA, the trial court stressed that it followed the procedure for declaring an individual to be an SVP set forth in 42 Pa.C.S.A. §

_____

 * * *
42 Pa.C.S.A. § 9799.55(b)(2)(i)(A).

[9] At the outset of the hearing, the trial court stated its purpose as "sentencing and for a hearing to determine whether or not [Appellant] [ ], will be designated as a sexually violent predator under Megan's Law." N.T., 6/5/17, at 3.

9799.24, the then-current state if the law.[10] Trial Court Order, filed 10/5/17, at 17.

However, this Court held in **Butler** that Subsection 9799.24(e)(3) of SORNA, regarding the procedure for determining whether a defendant is a sexually violent predator, violates the federal and state constitutions "because it increases the criminal penalty to which he is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." **Butler**, 173 A.3d at 1218. Appellant specifically was designated a sexually violent predator under 42 Pa.C.S.A. § 9799.24; thus in light of **Muniz** and **Butler**, Appellant's SVP designation constitutes an illegal sentence. Therefore, we are constrained to vacate that portion of Appellant's sentence finding him to be an SVP.

In light of the foregoing, we vacate that portion of Appellant's sentence finding him to be an SVP. We affirm the judgment of sentence in all other respects. We remand for the trial court to determine what, if any, registration requirements apply to Appellant.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

---

[10] This statute stated that at a hearing, prior to sentencing, the trial court should determine, based on clear and convincing evidence, whether the defendant was an SVP. **See** 42 Pa.C.S.A. § 9799.24(e)(3).

Judge Bowes files a Concurring Memorandum to which P.J.E. Bender concurs in the result.

P.J.E. Bender concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/6/18</u>